1    Steven J. Parsons
     Nevada Bar No. 363
2    LAW OFFICES OF STEVEN J. PARSONS
     7201 W. Lake Mead Blvd., Ste. 108
3    Las Vegas, NV 89128-8354
     (702) 384-9900
4    (702) 384-5900 (fax)
     Steve@SJPlawyer.com
5

6    Robert G. Russell, Jr.
     Nevada Bar No. 5475
     Cecilia O. Miller
7    *compliant with LR IA 10-2*
     PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
8    525 B St., Ste. 2200
     San Diego, CA 92101-4401
9    (619) 238.1900
     (619) 235.0398 (fax)
10   Bob.Russell@procopio.com
     Cecilia.Miller@procopio.com
11

     Attorneys for Defendants
12   **THE HERMAN KISHNER TRUST; IRWIN KISHNER,** as Trustee for the Herman
13   Kishner Trust; **JERRY ENGEL,** as Trustee for the Herman Kishner Trust; and **BANK OF**
14   **AMERICA, N.A.,** as Trustee for the Herman Kishner Trust
15

16                **UNITED STATES DISTRICT COURT**

17                   **DISTRICT OF NEVADA**

| | |
|---|---|
| 18   HARTFORD FIRE INSURANCE COMPANY, *et al.*, | Case No. **2:13-cv-55-MMD-(PAL)** |
| 19          Plaintiffs, | **COUNTERCLAIM OF THE HERMAN KISHNER TRUST; IRWIN KISHNER; JERRY ENGEL; and** |
| 20   v. | **BANK OF AMERICA, N.A. FOR:** |
| 21 | **(1) DECLARATORY RELIEF;** |
|    PACIFIC EMPLOYERS INSURANCE | **(2) BREACH OF CONTRACT;** |
| 22   COMPANY; *et al.*, | **(3) SPECIFIC PERFORMANCE;** |
| | **(4) BREACH OF THE IMPLIED COVENANT** |
| 23          Defendants. |     **OF GOOD FAITH AND FAIR DEALING,** and |
|    _____/ | **(5) BREACH OF STATUTORY DUTIES (NEV. REV. STAT § 686A.310).** |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |

26        **DEFENDANTS** and **COUNTER-CLAIMANTS, THE HERMAN KISHNER TRUST; IRWIN**

27   **KISHNER,** as Trustee for the Herman Kishner Trust; **JERRY ENGEL,** as Trustee for the Herman

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*
                     Page 1 of  23

1    Kishner Trust, and **BANK OF AMERICA, N.A.**, as Trustee for the Herman Kishner Trust;

2    (collectively, the "Trust Counter-claimants") by their attorneys Steven J. Parsons of LAW OFFICES

3    OF STEVEN J. PARSONS, and Robert G. Russell, Jr. and Cecilia O. Miller of PROCOPIO, CORY,

4    HARGREAVES AND SAVITCH, LLP, and as Counter-claims against Plaintiffs and Counter-defendants

5    **HARTFORD FIRE INSURANCE COMPANY** and **HARTFORD ACCIDENT AND INDEMNITY**

6    **COMPANY** (collectively, "Hartford" and/or "Counter-defendants") plead and allege as follows:

7         Dated: Friday, March 29, 2013.

8                                                Robert G. Russell, Jr.
                                                 Cecilia O. Miller
9                                                PROCOPIO, CORY, HARGREAVES & SAVITCH LLP and
                                                 LAW OFFICES OF STEVEN J. PARSONS
10
                                                 /s/ Steven J. Parsons
11                                               STEVEN J. PARSONS
                                                 Nevada Bar No. 363
12
                                                 Attorney for Defendants and Counter-claimants
13                                               **THE HERMAN KISHNER TRUST; IRWIN KISHNER**,
                                                 as Trustee for the Herman Kishner Trust; **JERRY**
14                                               **ENGEL**, as Trustee for the Herman Kishner Trust;
                                                 and **BANK OF AMERICA, N.A.**, as Trustee for the
15                                               Herman Kishner Trust

16                        <u>**CERTIFICATE OF SERVICE BY E-FILING**</u>

17         I hereby certify that service of the foregoing Defendants and Counter-claimants'

18    Counter-claim by e-filing with the Court's CM/ECF system, duly noting that on a prior e-filing

19    by the other parties, they have been noted as receiving copies from the court by e-filing and

20    that they have consented to be served in that manner.

21         Dated: Friday, March 29, 2013.

22                                               /s/ Tana Daugherty
                                                 An Employee of LAW OFFICES OF STEVEN J. PARSONS
23

24

25

26

27

## PARTIES

1.     Counterclaimant the Herman Kishner Trust ("Kishner Trust") is a private trust created and maintained under the laws of the State of Nevada.  Upon the death of Herman Kishner, the Kishner Trust was subdivided into two trusts, The Herman Kishner Trust B-1, which existed for the benefit of his daughter Sara, and The Herman Kishner Trust B-2, which existed for the benefit of his son Michael.  The only trust with an interest in the property at issue in this dispute is The Herman Kishner Trust B-1, which is the successor to The Herman Kishner Trust.

2.     Counterclaimant Irwin Kishner, who is a party solely in his capacity as a Trustee for the Kishner Trust, is a citizen of Nevada.

3.     Counterclaimant Jerry Engel, who is a party solely in his capacity as a Trustee for the Kishner Trust, is a citizen of Nevada.

4.     Counterclaimant Bank of America, N.A. ("Bank of America"), which is a party solely in its capacity as Co-Trustee for the Kishner Trust, is a banking association organized under the laws of Delaware with its principal place of business in North Carolina.  The Valley Bank of Nevada was a Co-Trustee of the Kishner Trust until in or about 1992.  Upon Bank of America's acquisition of the Valley Bank of Nevada in 1992, Bank of America became successor  Co-Trustee of the Kishner Trust.

5.     The Trust Counterclaimants are informed and believe and thereon allege that plaintiff and counterdefendant Hartford Fire Insurance Company ("Hartford Fire") is an insurance company organized under the laws of the State of Connecticut with its principal place of business in Connecticut.

6.     The Trust Counterclaimants are informed and believe and thereon allege that plaintiff and counterdefendant Hartford Accident and Indemnity Company ("Hartford Accident") is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Connecticut.

7.     Counterdefendants Hartford Fire and Hartford Accident are collectively referred

1   to herein as "Hartford."

2       8.      These Counterclaims arise out of the transactions and occurrences of the

3   Plaintiffs' claims for relief and are therefore compulsory within the meaning of Federal Rule of

4   Civil Procedure 13(a); the Court has jurisdiction over these counterclaims under the doctrine

5   of supplemental jurisdiction as described in 28 U.S.C. § 1367(a).

6                       <u>SUMMARY OF THE UNDERLYING ACTIONS</u>

7       9.      Between 1968 and 1984, the Kishner Trust owned property located at 3659

8   South Maryland Parkway, Las Vegas, Nevada ("the Property").  The landlord office for the

9   Property was located at 3661 South Maryland Parkway, Las Vegas, Nevada.

10      10.     On April 29, 1968, Herman Kishner, dba The Maryland Square Shopping Center,

11  leased premises on the Property to Al Phillips The Cleaners, Inc.  Thereafter, Al Phillips The

12  Cleaner, Inc. assigned the lease to Shapiro Bros. Investment Corp. ("SBIC").

13      11.     SBIC operated a dry cleaning business on the Property between 1969 and

14  August 30, 1984, conducting the business from time to time under the fictitious names "Al

15  Phillips The Cleaner" and "Al Phillips The Cleaner, Inc."

16      12.     Irwin Kishner, Jerry Engel and Valley Bank of Nevada, Trustees of the Herman

17  Kishner Trust, and SBIC dba Al Phillips the Cleaners entered a lease agreement dated

18  November 18, 1982 pursuant to which the tenant was required to name the lessor or landlord

19  as an additional insured.

20      13.     The landlords of the Property included, from time to time, the Kishner Trust,

21  Irwin Kishner, Jerry Engel and Valley Bank of Nevada as Trustees of The Kishner Trust.

22      14.     In 2002, the Kishner Trust sold the Property to the Clark County School District.

23      15.     In 2005, Maryland Square LLC purchased the Property from the Clark County

24  School District.  Maryland Square LLC currently owns the Property.

25      16.     On December 21, 2007, owners of homes located near the Property filed a

26  class action lawsuit captioned *Voggenthaler, et al. v. Al Phillips The Cleaner, Inc., et al.*, Case

27  No. 07-A-553784 in the Eighth Judicial Court, Clark County, Nevada (the "State Court

Action"). The Third Amended Complaint in the State Court Action included claims for relief for (1) Trespass, (2) Private Nuisance, and (3) Negligence. *See* Exhibit A, Third Amended Complaint dated July 20, 2010 in State Court Action (hereinafter "State Court Complaint").

17.    The class of homeowners in the State Court Action alleged, *inter alia*, that the solvent perchloroethylene ("PERC" or "PCE") was found in soil and groundwater at and below their homes. *See* Exhibit A, State Court Complaint, ¶ 1, ¶ 56.

18.    The class of homeowners in the State Court Action further alleged, inter alia, that the presence of the PCE was the result of acts or omissions of the owners of the Property or operators of premises on the Property. *See* Exhibit A, State Court Complaint, ¶ 2, ¶ 8, ¶¶ 91-94.

19.    The class of homeowners in the State Court Action further alleged, *inter alia*, that they had suffered damages, including damage to their properties, as a result of the presence of PCE. *See* Exhibit A, State Court Complaint, ¶ 56, ¶ 70, ¶ 76, ¶ 88, ¶ 94.

20.    On January 30, 2012, the parties in the State Court Action reached a settlement.

21.    On June 27, 2012, the court dismissed with prejudice the Plaintiffs' claims in the State Court Action.

22.    On July 26, 2012, the court dismissed without prejudice the Third Party Complaints and Cross-Complaints in the State Court Action.

23.    There has been no order of dismissal as to those parties in the State Court Action who never received process.

24.    On November 19, 2008, a class of homeowners filed a lawsuit captioned, *Voggenthaler, et al. v. Maryland Square, LLC, et al.*, Case No. 2:08-cv-1618-LDG-(GWF) in the United States District Court for the District of Nevada ("Federal Court Action"). The complaint in the Federal Court Action sought relief under the Federal Resource Conservation and Recovery Act ("RCRA") for the alleged impacts of PCE in the soil and groundwater at and below the homeowners' properties.

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 5 of  23

25.     The class of homeowners in the Federal Court Action alleged, inter alia, damage to their properties, endangerment to health or the environment, and impaired water quality. *See* Exhibit B, Complaint dated November 19, 2008 in Federal Court Action (hereinafter, "Federal Court Complaint"), ¶ 44; ¶ 64, ¶69.

26.     The class of homeowners in the Federal Court Action alleged, inter alia, that the damage was the result of acts or omissions of the owners of the Property or operators of premises on the Property.  *See* Exhibit B, Federal Court Complaint, ¶ 45; ¶¶ 65-68.

27.     The class of homeowners in the Federal Court Action alleged, inter alia, that "the endangerment caused by Violators has been ongoing since 1969 and is continuing in nature." *See* Exhibit B, Federal Court Complaint, ¶ 68.

28.     On May 4, 2009 the State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection, Bureau of Corrective Actions ("NDEP") filed a lawsuit titled *State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection, Bureau of Corrective Actions v. Maryland Square Shopping Center, LLC, et al.,* Case No. 3:09-CV-00231-BES-(VPC) in the United States District Court for the District of Nevada (the "NDEP Action").

29.     NDEP alleged causes of action for (1) Cost Recovery Pursuant to Section 107(a), Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), (2) Declaratory Relief Pursuant to CERCLA, (3) Cost Recovery Pursuant to NRS 459.537, and (4) Injunctive Relief Pursuant to NRS 445A.695 relating to the presence of PCE in soil and groundwater near the Property.  *See* Exhibit C, Complaint dated May 4, 2009 filed in NDEP Action.

30.     On August 10, 2010, the NDEP Action was consolidated with the Federal Court Action.

31.     On July 22, 2010, the district court in the Federal Court Action issued a permanent injunction in favor of the Voggenthaler plaintiffs requiring the Trust Counterclaimants to conduct investigation, mitigation and remediation activities, including soil

1   and groundwater remediation and indoor air monitoring and mitigative measures, if necessary.

2       32.    On December 27, 2010, the district court in the Federal Court Action issued a

3   permanent injunction order against the Trust Counterclaimants, Maryland Square LLC and

4   SBIC to commence remediation.

5       33.    The district court thereafter issued amended judgments, collectively granting

6   counsel to the Voggenthaler plaintiffs attorneys fees and costs pursuant to RCRA against the

7   Trust Counterclaimants and Maryland Square LLC.

8       34.    Maryland Square LLC appealed to the United States Court of Appeals for the

9   Ninth Circuit the district court's orders in the Federal Court Action granting summary judgment,

10  a permanent injunction and the award of attorneys fees and costs.   A hearing on these

11  appeals is scheduled for April 17, 2013.

12      35.    The Voggenthaler plaintiffs filed a cross-appeal to Maryland Square LLC's appeal

13  of the judgment granting attorneys fees and costs.   A hearing on this appeal has not been

14  scheduled.

15      36.    SBIC filed an appeal of the permanent injunction.   A hearing on this appeal has

16  been scheduled for April 17, 2013.

17      37.    On May 17, 2012, the district court in the Federal Court Action granted the

18  motion of NDEP for summary judgment on its claims for injunctive relief and for payment of

19  past oversight costs and attorneys' fees.

20      38.    Defendants in the Federal Court Action appealed the district court's summary

21  judgment ruling to the United States Court of Appeals for the Ninth Circuit.   A hearing on these

22  appeals has not been scheduled.

23      39.    The district court has not entered final judgment in the Federal Court Action,

24  pending a decision by the United States Court of Appeals for the Ninth Circuit on these

25  multiple appeals.

26      40.    The State Court Action, the Federal Court Action and the NDEP Action are

27  collectively referred to as the "Underlying Actions."

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 7 of  23

## THE HARTFORD INSURANCE POLICIES

### The Hartford Primary Policies

41.     In return for payment of premiums, Hartford Fire issued a general liability policy to "Shapiro Brothers Investment DBA: Al Phillips the Cleaner" under Policy Number 53 CBP GV 6264 for the period of November 7, 1982 to August 1, 1983.  The policy provides $1,000,000 in policy limits each occurrence and in the aggregate.  Such policy is in the possession of the Hartford.

42.     In return for payment of premiums, Hartford Accident issued a general liability policy to "Shapiro Brothers Investment DBA: Al Phillips the Cleaner" under Policy Number 53 CBP GV 6264 for the period of August 1, 1983 to August 1, 1984.  The policy provides $1,000,000 in policy limits each occurrence and in the aggregate.  Such policy is in the possession of the Hartford.

43.     The two primary policies issued by the Hartford are collectively referred to as the "Hartford Primary Policies."

44.     The Hartford Primary Policies included by endorsement "Maryland Square Shopping Center" as an additional insured.

45.     On information and belief, the Hartford Primary Policies include a Special Broad Form endorsement that extended coverage to landlords of the premises insured.

46.     Hartford Accident Policy Number 53 CBP GV 6264 states, in relevant part:

> **XVII. Additional Persons Insured-Required by Contract or by Issuance of a Permit**
>
> (A) The "Persons Insured" provision is amended to include as an insured any person, organization, trustee, estate or governmental entity to whom or to which the named insured is obligated, by virtue of a written contract or agreement ... to provide insurance such as is afforded by this policy...

47.     Each of the Trust Counterclaimants is insured under the Hartford Primary Policies either as a Named Insured, an Additional Insured and/or in consideration of the reasonable expectations of the Named Insured in procuring the Policies.

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 8 of  23

48.     The Insuring Agreement of the Hartford Primary Policies provides, in relevant part:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of
>
> **Coverage A** *bodily injury* or
>
> **Coverage B** *property damage*
>
> to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage* even if any of the allegations are groundless, false or fraudulent …

49.     On information and belief, the Hartford Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

50.     On information and belief, the Hartford Primary Policies define "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

51.     The Hartford Primary Policies contain an exclusion for pollution which provides, in relevant part:

> This insurance does not apply:
>
> to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, release or escape is sudden and accidental.

…

…

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

**The Hartford Umbrella Policies**

52.    In return for the payment of premiums, Hartford Accident issued an umbrella liability policy to "Shapiro Brothers Investments DBA: Al Phillips The Cleaner," under Policy Number 53 RHU NB 6570 for the period of April 11, 1983 to August 1, 1983.  The policy has a $10,000 Self-Insured Retention and provides $4,000,000 in policy limits each occurrence and in the aggregate.  Such policy is in the possession of the Hartford.

53.    In return for the payment of premiums, Hartford Accident issued an umbrella liability policy to "Shapiro Brothers Investments DBA: Al Phillips The Cleaner," under Policy Number 53 RHU NB 6570 for the period of August 1, 1983 to August 1, 1984.  The policy has a $10,000 Self-Insured Retention and provides $4,000,000 in policy limits each occurrence and in the aggregate.  Such policy is in the possession of the Hartford.

54.    The two umbrella policies issued by the Hartford are collectively referred to as the "Hartford Umbrella Policies."

55.    The Hartford Umbrella Policies include as "Persons Insured" "any other person or organization who is an Insured under any policy of underlying insurance, subject to all the limitations upon coverage under such policy other than the limits of the underlying insurer's liability."

56.    Each of the Trust Counterclaimants is insured under the Hartford Umbrella Policies either as a Named Insured, an Additional Insured and/or in consideration of the reasonable expectations of the Named Insured in procuring the Policies.

57.    The Insuring Agreement of the Hartford Umbrella Policies provides, in relevant part:

    I.  COVERAGE

    The company will pay on behalf of the **insured ultimate net loss** in excess of the total applicable limit (as stated in the Extension Schedule of **Underlying Insurance** Policies) of **underlying insurance** or the amount of the **self-insured retention** when no **underlying insurance** applies, because of **bodily injury, personal injury, property damage** or **advertising injury** to which this insurance applies, caused by an **occurrence**.

Law Offices of Steven J. Parsons
7201 W. Lake Mead Blvd., Ste. 108
Las Vegas, Nevada 89128-8354
(702)384-9900; fax (702)384-5900
Steve@SJPlawyer.com

58.     The Extension Schedule of Underlying Insurance Policies in the Hartford Umbrella Policies identifies Hartford comprehensive automobile liability policy numbered 53 CBP GV6264 and Hartford general liability policy numbered 53 CBP GV6264.

59.     The Hartford Umbrella Policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

60.     The Hartford Umbrella Policies define "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

61.     The Hartford Umbrella Policies contain an exclusion for pollution which provides, in relevant part:

> This insurance does not apply:
>
> to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, release or escape is sudden and accidental.

62.     At all pertinent times, the required premiums were paid with respect to the Hartford Primary and Umbrella Policies and the Policies were in full force and effect.

63.     The Counterclaimants have performed in a timely manner all conditions and covenants to be performed under the Hartford Primary and Umbrella Policies, or have by virtue of the Hartford's conduct been excused from doing so.

...

...

...

...

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 11 of  23

## THE HARTFORD ACKNOWLEDGES ITS COVERAGE OBLIGATIONS,
## BUT DECLINES TO MEET THOSE OBLIGATIONS

64.     The Trust Counterclaimants timely tendered the Underlying Actions to Hartford for defense and indemnification coverage.

65.     By correspondence dated April 10, 2008, Hartford acknowledged its obligation to defend Maryland Square Shopping Center in the State Action under the Hartford Primary Policies.

66.     By correspondence dated May 6, 2009, Hartford acknowledged its obligation to defend Maryland Square Shopping Center in the Federal Action under the Hartford Primary Policies.

67.     By correspondence dated May 6, 2009, Hartford declined to provide a defense to Jerry Engel, Irwin Kishner and the Kishner Trust for the State Action and the Federal Action.

68.     By correspondence dated July 1, 2009, Hartford acknowledged its obligation to defend Maryland Square Shopping Center in the NDEP Action under the Hartford Primary Policies.

69.     By correspondence dated July 6, 2009, Hartford declined to provide a defense to Jerry Engel, Irwin Kishner and the Kishner Trust for the NDEP Action.

70.     Harford has not provided a full and complete defense of Maryland Square Shopping Center in the Underlying Actions, and instead has only paid a share of the defense fees and costs.

71.     Hartford has declined entirely to pay certain defense fees and costs incurred by the Maryland Square Shopping Center in the Underlying Actions by, inter alia, concluding that such costs were indemnity expenses.

72.     Hartford has declined to provide any defense to Jerry Engel, Irwin Kishner, the Kishner Trust and Bank of America in the Underlying Actions under the Hartford Primary and Umbrella Policies.

73.     Hartford has declined any indemnification obligation to Jerry Engel, Irwin Kishner,

1    the Kishner Trust and Bank of America in the Underlying Actions under the Hartford Primary

2    and Umbrella Policies.

3          74.    By correspondence dated August 13, 2010 and March 29, 2011, Hartford

4    declined any obligation to indemnify Maryland Square Shopping Center in the Underlying

5    Actions under the Hartford Primary and Umbrella Policies.

6          75.    To date, the Trust Counterclaimants have paid in excess of $1.2 million for

7    environmental investigative and cleanup and air monitoring costs, and the costs to comply with

8    orders issued in the Federal Court Action.  Future costs are projected to exceed $10 million.

9          76.    The Hartford has not provided any reimbursement toward these costs.

10         77.    The Trust Counterclaimants, and those acting on their behalf, are taking

11   reasonable and appropriate actions to defend against the Underlying Actions and have incurred

12   and will continue to incur costs and expenses.

13         78.    The Trust Counterclaimants, and those acting on their behalf, are taking

14   reasonable and appropriate actions to respond to liabilities incurred in the Underlying Actions

15   and have incurred and will continue to incur costs and expenses.

16         79.    Hartford accepted premiums for the Hartford Primary and Umbrella Policies in

17   return for the expectation by those insured under the Policies that the Hartford would provide

18   coverage, knowingly creating such expectations and accepting premiums in return therefor.

19   The Trust Counterclaimants reasonably expected that Hartford would provide a defense and

20   indemnity in the Underlying Actions.

21         80.    Despite having acknowledged in writing a coverage obligation to Maryland

22   Square Shopping Center with respect to the Underlying Actions, Hartford declined to provide

23   a complete and full defense and initiated this action seeking a declaration from the Court that

24   it has no duty to provide a defense or indemnify the Trust Counterclaimants in the Underlying

25   Actions.

26   ...

27   ...

## COUNT I

### (Declaratory Judgment –

### Regarding the Hartford's Coverage Obligations in the Underlying Actions)

81.     The Trust Counterclaimants re-allege and incorporate herein by reference the allegations of Paragraphs 1 through 80.

82.     By virtue of the Hartford's filing of this action, and notwithstanding the Hartford's written acknowledgment of a duty to defend Maryland Square Shopping Center in the Underlying Actions, an actual controversy exists between the Trust Counterclaimants and Hartford regarding Hartford's duty to defend and indemnify the Trust Counterclaimants in the Underlying Actions under the Hartford Primary and Umbrella Policies.

83.     Under the Hartford Primary and Umbrella Policies, Hartford is obligated, separate and apart from any other insurer, to fully and adequately defend the Trust Counterclaimants and to pay in full on behalf of the Trust Counterclaimants all defense fees, costs and liabilities incurred, and to be incurred, in the Underlying Actions.  Under the allegations of the Underlying Actions, the Trust Counterclaimants could be held liable, inter alia, for "damages" resulting from "property damage" arising from the alleged acts and omissions of the owners of the Property and operators of premises on the Property during the policy periods of the Policies. The allegations of the Underlying Actions thus potentially fall within the scope of the terms and coverage provisions of the Policies.  Accordingly, Hartford has a past, present and ongoing duty to defend the Trust Counterclaimants in the Underlying Actions and to indemnify the Trust Counterclaimants for liabilities incurred in the Underlying Actions.

84.     The Trust Counterclaimants and those acting on their behalf are taking reasonable and appropriate responsive actions and have incurred, and will continue to incur, fees, costs, expenses and liabilities in response to the Underlying Actions, the exact amount of which has yet to be ascertained.

85.     In spite of its written acknowledgment of a duty to defend, Hartford nonetheless contends in this action that the Hartford Primary and Umbrella Policies impose no coverage

1   obligations on the Hartford for the Underlying Actions.

2       86.   Hartford has failed to fully defend and indemnify the Trust Counterclaimants.

3       87.   The Trust Counterclaimants desire a judicial determination and declaration that

4   Hartford is obligated to defend and indemnify the Trust Counterclaimants in the Underlying

5   Actions.   A judicial declaration of Hartford's duty to defend and indemnify the Trust

6   Counterclaimants in the Underlying Actions is necessary and appropriate at this time because

7   the Trust Counterclaimants continue to incur costs and expenses in response to the Underlying

8   Actions.

9                              <u>COUNT II</u>

10                          (Breach of Contract –

11          **as to the Hartford's Coverage Obligations in the Underlying Actions)**

12      88.   The Trust Counterclaimants re-allege and incorporate herein by reference the

13   allegations of Paragraphs 1 through 87.

14      89.   Under the Hartford Primary and Umbrella Policies, Hartford is obligated, separate

15   and apart from any other insurer, to fully and adequately defend the Trust Counterclaimants

16   and to pay in full on behalf of the Trust Counterclaimants all fees, costs and liabilities incurred,

17   and to be incurred, in the Underlying Actions.  Under the allegations of the Underlying Actions,

18   the Trust Counterclaimants could be held liable for, inter alia, "damages" resulting from

19   "property damage" arising from the alleged acts and omissions of the owners of the Property

20   and operators of premises on the Property during the policy periods of the Policies.  The

21   allegations of the Underlying Actions thus potentially fall within the scope of the terms and

22   coverage provisions of the Policies.  Accordingly, Hartford has a past, present and ongoing duty

23   to defend the Trust Counterclaimants in the Underlying Actions and to indemnify the Trust

24   Counterclaimants for liabilities incurred in the Underlying Actions.

25      90.   Hartford has breached its contractual obligation under the Policies to fully defend

26   Maryland Square Shopping Center by providing only a partial defense of the Underlying

27   Actions.

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 15 of  23

91.    Hartford has breached its contractual obligations to defend under the Policies by failing to provide any defense to Irwin Kishner, Jerry Engel, the Kishner Trust and Bank of America in the Underlying Actions.

92.    Hartford has breached its contractual obligations under the Policies to indemnify the Trust Counterclaimants by failing to fully reimburse the fees, costs, expenses and liabilities incurred by the Trust Counterclaimants in response to the Underlying Actions.

93.    Hartford's refusal to provide the Trust Counterclaimants with coverage denies the Trust Counterclaimants the benefits contracted for under the Policies because the Trust Counterclaimants are deprived of the bargained for insurer-funded defense of claims during the pendency of the Underlying Actions and the bargained for indemnification of liabilities incurred in the Underlying Actions.

94.    Accordingly, as a proximate result of Hartford's breach of its contractual obligations under the Policies, the Trust Counterclaimants have suffered consequential damages, including attorneys fees and costs, which the Trust Counterclaimants have incurred, and will continue to incur, plus interest thereon, the exact amount of which has yet to be ascertained.

## COUNT III

### (Specific Performance of Hartford's Duty to Provide Coverage)

95.    The Trust Counterclaimants re-allege and incorporate herein by reference the allegations of Paragraphs 1 through 94.

96.    As discussed in paragraphs above, the Trust Counterclaimants are insured by Hartford under specifically enforceable contracts sufficiently certain in their terms, i.e., the Hartford Primary and Umbrella Policies.

97.    At all pertinent times, the required premiums were paid with respect to the Hartford Primary and Umbrella Policies, and the Policies were in full force and effect.  Thus, Hartford received adequate consideration for the Policies.

98.    The provisions of the Hartford Primary and Umbrella Policies requiring Hartford

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*
                                                                     Page 16 of  23

1  to defend and indemnify the Trust Counterclaimants are just and reasonable.

2      99.   Since tender, the Trust Counterclaimants have consistently demanded that

3  Hartford provide a full defense in the Underlying Actions and indemnify for liabilities arising

4  therefrom.   Despite acknowledging in writing an obligation to defend Maryland Square

5  Shopping Center in the Underlying Actions, Hartford has declined to provide a full defense.

6  Hartford has declined to provide any defense to Irwin Kishner, Jerry Engel, Bank of America

7  and the Kishner Trust.   Hartford has declined any obligation to indemnify the Trust

8  Counterclaimants and has failed to reimburse amounts incurred in response to the Underlying

9  Actions.  Hartford has thus breached its contractual obligations to the Trust Counterclaimants

10  under the Hartford Primary and Umbrella Policies.

11      100.   If Hartford does not provide the Trust Counterclaimants with a full defense in the

12  Underlying Actions, the Trust Counterclaimants will be irreparably harmed.  Therefore the Trust

13  Counterclaimants have no adequate remedy at law in that they will be deprived of the benefits

14  Hartford promised to provide by accepting premiums, i.e., the contemporaneous provision of

15  a full defense in the Underlying Actions.   The duty to defend promised by Hartford in the

16  Policies imposes an immediate obligation to pay such defense costs as those costs are

17  incurred, and after-the-fact reimbursement of fees is inadequate.  The Trust Counterclaimants'

18  theoretical remedy of bringing a succession of legal actions to enforce Hartford's obligation to

19  pay defense costs also is inadequate.

20      101.   If Hartford does not provide the Trust Counterclaimants with indemnification of

21  liabilities incurred in the Underlying Actions, the Trust Counterclaimants will be irreparably

22  harmed.  Therefore the Trust Counterclaimants have no adequate remedy at law in that they

23  will be deprived of the benefits Hartford promised to provide by accepting premiums, i.e., the

24  payment of covered damages incurred in the Underlying Actions.  The Hartford Policies impose

25  an obligation to reimburse those sums which the insured becomes legally obligated to pay as

26  damages because of property damage.   The Trust Counterclaimants have incurred, and

27  continue to incur, fees, costs, expenses and liabilities in response to the Underlying Actions

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 17 of  23

1  for which they have received no reimbursement from the Hartford.  These liabilities cause

2  financial harm to the Trust Counterclaimants.  The Trust Counterclaimants' theoretical remedy

3  of bringing a succession of legal actions to enforce Hartford's obligation to reimburse these

4  costs also is inadequate.

5  <u>COUNT IV</u>

6  **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

7  **as to Hartford's Coverage Obligations)**

8  102.   The Trust Counterclaimants re-allege and incorporate herein by reference the

9  allegations of Paragraphs 1 through 101.

10  103.   Hartford has breached its duty of good faith and fair dealing owed to the Trust

11  Counterclaimants in at least the following respects:

12  (a)   Failing to provide Maryland Square Shopping Center with a full and complete

13  defense in the Underlying Actions by paying only a share of the defense fees and costs and

14  failing to pay entirely certain incurred defense fees and costs, in spite of repeated demands

15  and an acknowledged defense obligation, when Hartford knew that Maryland Square Shopping

16  Center is entitled to a full defense under the terms of the Hartford Primary Policies and

17  longstanding principles of insurance law;

18  (b)   Failing to provide any defense to Irwin Kishner, Jerry Engel, Bank of America and

19  the Kishner Trust in the Underlying Actions, despite repeated demands, while knowing a

20  defense was owed under the terms of the Policies and longstanding principles of insurance

21  law;

22  (c)   Failing to make payment toward fees, costs, expenses and liabilities incurred by

23  the Trust Counterclaimants in response to the Underlying Actions, despite repeated demands,

24  by unreasonably characterizing such costs and expenses as indemnity payments;

25  (d)   Prematurely declining indemnification coverage to the Trust Counterclaimants

26  for the Underlying Actions although certain of those actions remain pending with no final

27  judgment;

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 18 of  23

1    (e)    Placing its own interests in minimizing its coverage obligations ahead of the

2    interests of the Trust Counterclaimants by, inter alia, narrowly interpreting the provisions of the

3    Policies and instituting the instant declaratory relief action although certain of the Underlying

4    Actions remain pending; and

5    (f)    Making unreasonable interpretations under the Policies, including, inter alia, by

6    disputing the insured status of each of the Trust Counterclaimants.

7    104.    In declining to fulfill its coverage obligations to the Trust Counterclaimants under

8    the Policies, Hartford acted unreasonably and with the knowledge that there was no

9    reasonable basis for its conduct or a reckless disregard as to the unreasonableness of that

10   conduct.

11   105.    As a proximate result of the aforementioned wrongful conduct of Hartford, the

12   Trust Counterclaimants have sustained damages and out-of-pocket expenses, including, but

13   not limited to, attorneys fees attributable to the efforts of the Trust Counterclaimants to obtain

14   the full and adequate defense and indemnification coverage provided under the Policies.

15   106.    Hartford's conduct was intended to cause injury to the Trust Counterclaimants

16   or was despicable conduct, with a willful and conscious disregard of their rights, subjected the

17   Trust Counterclaimants to cruel and unjust hardship in conscious disregard of their rights, and

18   was an intentional misrepresentation, deceit, or concealment of a material fact known to

19   Hartford with the intention to deprive the Trust Counterclaimants of property, legal rights or to

20   otherwise cause injury, such as to constitute malice, oppression or fraud under Nev. Rev. Stat.

21   §42.005, thereby entitling the Trust Counterclaimants to punitive and/or exemplary damages

22   in an amount appropriate to punish and/or set an example of Hartford.

23   **COUNT V**

24   **(Breach of Statutory Duties (Nev. Rev. Stat. § 686A.310))**

25   107.    The Trust Counterclaimants re-allege and incorporate herein by reference the

26   allegations of Paragraphs 1 through 106.

27   108.    As an entity engaged in the business of insurance in Nevada, the Hartford is,

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 19 of 23

1   and at all relevant times was, an entity regulated by Nevada law within Nev. Rev. Stat. §686A.

2        109.   The Trust Counterclaimants, each a beneficiary under a policy of insurance with

3   the Hartford, was at all times relevant herein, a member of the class of persons sought to be

4   protected by law within Nev. Rev. Stat. §686A.310.   Within that statute, the Trust

5   Counterclaimants derive a private cause of action against Hartford for the violation of any

6   mandated or proscribed conduct.

7        110.   By the acts and omissions as alleged herein, Hartford has violated its duties to

8   the Trust Counterclaimants as set forth in Nev. Rev. Stat. §686A.310, as follows:

9        (a)   Misrepresenting to the Trust Counterclaimants facts and insurance policy

10   provisions relating to the coverage at issue;

11        (b)   Failing to acknowledge and act reasonably promptly upon communications with

12   respect to claims arising under the Policies;

13        (c)   Failing to adopt and implement reasonable standards for the prompt

14   investigation and processing of claims arising under the Policies;

15        (d)   Not attempting in good faith to make a prompt, fair and equitable settlement

16   of the claims alleged in the Underlying Actions in which liability had become reasonably clear;

17        (e)   Failing to provide a prompt and reasonable explanation of the basis in the

18   Policies, in relation to the applicable facts and law, for the denial of coverage;

19        (f)   Compelling the Trust Counterclaimants to litigate in order to obtain benefits

20   under the Policies; and

21        (g)   Failing to comply with the provisions of Nev. Rev. Stat. §687B.320.

22        111.   As a proximate result of the alleged wrongful conduct of Hartford, the Trust

23   Counterclaimants were compelled to retain legal counsel to obtain the benefits due under the

24   Policies.   Hartford is liable to the Trust Counterclaimants for attorneys fees and costs

25   reasonably necessary and incurred to obtain the policy benefits, in a sum to be determined

26   at the time of trial.

27        112.   Hartford's conduct was intended to cause injury to the Trust Counterclaimants

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 20 of  23

1   or was despicable conduct, with a willful and conscious disregard of their rights, subjected the

2   Trust Counterclaimants to cruel and unjust hardship in conscious disregard of their rights, and

3   was an intentional misrepresentation, deceit, or concealment of a material fact known to

4   Hartford with the intention to deprive the Trust Counterclaimants of property, legal rights or to

5   otherwise cause injury, such as to constitute malice, oppression or fraud under Nev. Rev. Stat.

6   §42.005, thereby entitling the Trust Counterclaimants to punitive and/or exemplary damages

7   in an amount appropriate to punish and/or set an example of Hartford.

8                                     **PRAYER FOR RELIEF**

9          Wherefore, the Trust Counterclaimants pray judgment against Counter-defendants

10  **HARTFORD FIRE INSURANCE COMPANY** and **HARTFORD ACCIDENT AND INDEMNITY**

11  **COMPANY**, and each of them, as follows:

12         1.     <u>As to the First Claim for Relief</u>:

13         a.     For a declaration that the Hartford Primary Policies require Hartford, separate

14  and apart from any other insurer, to provide a full defense of the Trust Counterclaimants on

15  a timely basis through the conclusion of each of the Underlying Actions, including all appeals;

16         b.     For a declaration and order that Hartford shall defend the Trust Counterclaimants

17  in the Underlying Actions by promptly reimbursing the Trust Counterclaimants for all

18  unreimbursed defense fees and costs incurred to date in defense of the Underlying Actions;

19         c.     For a declaration that the Hartford Primary and Umbrella Policies require Hartford

20  to indemnify the Trust Counterclaimants for fees, costs, expenses and liabilities incurred in the

21  Underlying Actions; and

22         d.     For a declaration and order that Hartford shall indemnify the Trust

23  Counterclaimants for liabilities incurred in the Underlying Actions by promptly reimbursing the

24  Trust Counterclaimants for unreimbursed payments made to date in response to liabilities

25  incurred in the Underlying Actions.

26         2.     <u>As to the Second Claim for Relief</u>:

27         a.     For general damages according to proof of breach of the Hartford Primary and

*Law Offices of Steven J. Parsons*
*7201 W. Lake Mead Blvd., Ste. 108*
*Las Vegas, Nevada 89128-8354*
*(702)384-9900; fax (702)384-5900*
*Steve@SJPlawyer.com*

Page 21 of 23

1    Umbrella Policies, the exact amount of which has yet to be ascertained;

2         b.      For pre- and post-judgment interest thereon at the legal rate until paid; and

3         c.      For loss attributable to a diminution in the purchasing power of the dollar that

4    has occurred since the date the Trust Counterclaimants sustained damage.

5         **3.**    **As to the Third Claim for Relief:**

6         For specific performance of Hartford's coverage duties owed to the Trust

7    Counterclaimants in the Underlying Actions.

8         **4.**    **As to the Fourth Claim for Relief:**

9         a.      For general damages according to proof of Hartford's bad faith;

10        b.      For attorneys fees and other legal expenses attributable to the efforts of the

11   Trust Counterclaimants to obtain a full and adequate defense and indemnification in

12   connection with the Underlying Actions; and

13        c.      For punitive and exemplary damages against Hartford, according to proof.

14        **5.**    **As to the Fifth Claim for Relief:**

15        a.      For general damages according to proof of Hartford's breach of its statutory

16   duties;

17        b.      For attorneys fees and other legal expenses attributable to the efforts of the

18   Trust Counterclaimants to obtain a full and adequate defense and indemnification in

19   connection with the Underlying Actions; and

20        c.      For punitive and exemplary damages against Hartford, according to proof.

21        **6.**    **As to all claims for relief:**

22        a.      For attorneys fees, including within Nev. Rev. Stat. 18.010;

23        b.      For costs of suit incurred herein; and

24   ...

25   ...

26   ...

27   ...

1      c.      For such other relief as the Court deems just and proper.

2                          **<u>DEMAND FOR JURY TRIAL</u>**

3      Under Rule 38 of the Federal Rules of Civil Procedure, the Trust Counterclaimants

4   demand a trial by jury on all issues so triable.

5      Dated: Friday, March 29, 2013.

6                                          Robert G. Russell, Jr.
                                           Cecilia O. Miller
7                                          PROCOPIO, CORY, HARGREAVES & SAVITCH LLP and
                                           LAW OFFICES OF STEVEN J. PARSONS
8
                                           /s/ Steven J. Parsons
9                                          STEVEN J. PARSONS
                                           Nevada Bar No. 363
10
                                           Attorney for Defendants and Counter-claimants
11                                         **THE HERMAN KISHNER TRUST; IRWIN KISHNER**,
                                           as Trustee for the Herman Kishner Trust; **JERRY**
12                                         **ENGEL,** as Trustee for the Herman Kishner Trust;
                                           and **BANK OF AMERICA, N.A.,** as Trustee for the
13                                         Herman Kishner Trust;

14

15

16

17

18

19

20

21

22

23

24

25

26

27